UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HERBERT ZINZ,                                                                 Docket No. 13 CIV 4415 (LGS)

                           Plaintiff(s),

      -against-

EMPIRE CITY SUBWAY COMPANY (LIMITED), THE
CITY OF NEW YORK, CONSOLIDATED EDISON
COMPANY OF NEW YORK INC., and OPTICAL
COMMUNICATIONS, INC.

                           Defendant(s).
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EMPIRE CITY SUBWAY COMPANY (LIMITED)'S MOTION FOR SUMMARY JUDGMENT**

DATED:     New York, New York
                September 2, 2014

                                         **CONWAY, FARRELL, CURTIN
                                         & KELLY, P.C.**

                                         By: _____
                                            DARRELL JOHN, ESQ. (DJ 3607)
                                            Attorneys for Defendant, EMPIRE CITY
                                            SUBWAY COMPANY (LIMITED)
                                            48 Wall Street – 20th Floor
                                            New York, N.Y. 10005
                                            (212) 785-2929
                                            djohn@conwayfarrell.com

## TABLE OF CONTENTS

Page

Statement of Facts.................................................................................................. 1

Legal Standard......................................................................................................... 4

Summary Judgment Standard………...…………………………………………… 4


Argument................................................................................................................. 6

POINT I:

ECS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
ECS DID NOT CAUSE THE SUBJECT HOLE AND THERE
IS NO ADMISSIBLE EVIDENCE THAT THE SUBJECT HOLE
WAS WITHIN 12 INCHES OF THE ECS MANHOLE COVER.
............................................................................................................... 6

POINT II:

ECS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
THERE IS NO ADMISSIBLE EVIDENCE THAT THE PLAINTIFF
FELL WITHIN 12 INCHES OF THE SUBJECT ECS MANHOLE COVER.
.............................................................................................................. 8


POINT III:

ECS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE
EVIDENCE SHOWS THAT ECS DID NOT HAVE ACTUAL
NOTICE OF THE SUBJECT DEFECT, AND THE EVIDENCE DOES
NOT SUPPORT AN INFERENCE OF CONSTRUCTIVE NOTICE
OF THE SUBJECT DEFECT.
............................................................................................................... 10


Conclusion............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

Di Sanza v. City of New York, 47 A.D.3d 535, 535, 851 N.Y.S.2d 35, 36
aff'd, 11 N.Y.3d 766, 896 N.E.2d 661 (2008) ................................................. 10

Erie R.R. v. Tomkins, 304 U.S. 64, 78 (1938) ................................................. 4

In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 849 (2d Cir. 1992) ................................................. 4

McGruder v. Gray, 265 A.D.2d 822, 822, 696 N.Y.S.2d 335, 336 (1999) ................................................. 8

Nabisco v. Warner–Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000). ................................................. 5

Saporito v. City of New York, 14 N.Y.2d 474, 476, 202 N.E.2d 369, 369 (1964) ................................................. 7

Schwartz v. Orange & Rockland Utilities, Inc., 93 A.D.3d 776, 940 N.Y.S.2d 320
(2nd Dept. 2012)

Siegel v. City of New York, 86 A.D.3d 452, 453, 928 N.Y.S.2d 1, 2 (2011) ................................................. 9, 10

Wallace v. Nat'l R.R. Passenger Corp., 11 CIV. 5419 AJN, 2014 WL 1088906
(S.D.N.Y. Mar. 18, 2014) ................................................. 6

**STATUTES**

34 RCNY § 2-07(b)(1) and (b)(2) ................................................. 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HERBERT ZINZ,                                            Docket No. 13 CIV 4415 (LGS)

                Plaintiff(s),

                                                  **MEMORANDUM OF LAW**

      -against-

EMPIRE CITY SUBWAY COMPANY (LIMITED), THE
CITY OF NEW YORK, CONSOLIDATED EDISON
COMPANY OF NEW YORK INC., and OPTICAL
COMMUNICATIONS, INC.

                Defendant(s).
------------------------------------------------------------------X

       The Defendant, Empire City Subway Company (Limited) (hereinafter referred to as "ECS") submits this memorandum of law in support of its summary judgment motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, since there are no questions of fact for a jury trial with respect to the alleged negligence of ECS.

## STATEMENT OF FACTS

       The plaintiff, Herbert Zinz, a resident of Florida, alleges in the subject complaint that he tripped and fell in a hole located in the intersection of Broadway and Spring Street in Manhattan. See John Decl., **Exhibit A.**

       Mr. Denis Donovan, an Area Operations Manager for ECS, avers in his affidavit that he is responsible for managing ECS' subsurface construction and maintenance activity. See John Decl., **Exhibit G.** He avers that he is familiar with the New York City rules and regulations pertaining to street hardware including 34 RCNY 2-07(b)(1) and (b)(2) also known as the 12 Inch Rule, and that ECS is only responsible to maintain the 12 inch area of roadway asphalt surrounding the perimeter of the subject manhole cover. See John Decl., **Exhibit G.**

At his 50H hearing before the City of New York, when asked to describe the accident, Mr. Zinz testified that his left foot went into a pothole:

Q. Can you describe the accident, tell us what happened?

A. Yeah. As I was walking, my foot went into this pothole.

Q. Which foot?

A. The left foot, and I just flew. I was like an airplane, just went like that (indicating).

Q. You are indicating forward?

A. Yeah, forward…..

John Decl., **Exhibit E** at page 25, 26.

Mr. Zinz testified that he did not see the pothole before he stepped into it. John Decl., **Exhibit E** at page 28. Mr. Zinz was then asked to place an "X" on a photograph depicting the hole to indicate the spot where he tripped.

Q. With your lawyer's permission, do you want to place an X with this black pen over the spot where you stepped, if you can?

MS. EILENDER: He wants to know if you can make an X exactly where your foot went.

A. You know, this is a confusing type of thing.

Mr. Zinz was unable to indicate in the photograph exactly where he stepped before he fell forward. Instead, he was only able to circle the entire hole. John Decl., **Exhibit E** at page 34, 35. John Decl., **Exhibit E** at page 35.

At his deposition on April 28, 2014, Mr. Zinz's attorney Elizabeth Eilender questioned him regarding the location of his accident. Ms. Eilender asked Mr. Zinz to circle the hole that caused his accident in a photograph marked Exhibit 1, and he obliged and circled the entire hole. John Decl **Exhibit F** at page 50. (It should be noted that this was the same photograph that was marked Exhibit F at his 50H hearing where he testified that he did not recognize anything in the photograph.) John Decl,, **Exhibit F** at page 54, **Exhibit E** at page 38, 39.)

At the deposition, Mr. Zinz further testified as follows in response to his attorney's questioning:

Q. Can you describe the mechanism by how you fell?

A. As I was walking, my left foot went into the hole, then my right foot. And the pressure from the back of my left foot just threw me forward.

Q. What was the back of your left foot pressuring on?

A. The hole itself, the back of the hole.

John Decl,, **Exhibit F** at page 54. Mr. Zinz still could not place the exact location of where he tripped as within 12 inches of the ECS manhole cover. He was only able to testify that he tripped along the back of the hole which according to the Plaintiff's Notice of Claim is a rectangle that is 26 inches by 33 inches. John Decl,, **Exhibit H**. Mr. Zinz had testified at his 50H that the hole that caused his fall was an 18 inch to 20 inch square shaped hole. John Decl., **Exhibit E** at page 28, 29.

Mr. Zinz testified that he did not know the distance between the manhole cover and the hole. John Decl., **Exhibit E** at page 36, 37. The plaintiff does not have any evidence of the distance between the manhole cover and the actual hole. Rather than producing evidence showing the distance of the actual hole from the ECS manhole cover, the plaintiff has only

produced a post-accident photograph taken by his attorney depicting a roadway repair with a tape measure placed between the edge of the repair and the ECS manhole cover showing 10 inches. See John Decl., **Exhibit I**. According to the photograph in **Exhibit I**, the distance between the ECS manhole cover and the closest point of the repair appears to be 10 inches on the tape measure. See John Decl., **Exhibit I**. There is no evidence (expert or otherwise) that the dimensions of the repair depicted in the photograph were the same as the original hole on the date of the accident.

When asked if he had walked over the ECS manhole cover, he testified that he doubted it. John Decl., **Exhibit E** at page 34, 38.

Mr. Donovan reviewed the plaintiff's photograph of the subject defect, (annexed to his affidavit as Exhibit A) and avers that the subject defect is a roadway cut containing a trench that runs in an east-west direction north of the subject ECS manhole cover. See John Decl., **Exhibit G.** He avers that ECS has not had any facility within the subject intersection north of the subject manhole that runs in an east-west direction since 1916. See John Decl., **Exhibit G.** Mr. Donovan also avers that based on his research of ECS work records for the three years prior to and including March 30, 2013, ECS did not perform any roadway work in the intersection. See John Decl., **Exhibit G.** Finally, Mr. Donovan avers that based on his research of ECS records for the three years prior to and including March 30, 2013, ECS did not receive any complaints, violations, corrective actions requests (CAR), or notices of immediate corrective action (NICA) regarding the subject condition. See John Decl., **Exhibit G.** Mr. Donovan avers that based on a three year search prior to and including March 30, 2013, the date of the accident, ECS did not perform any roadway work at the intersection. See John Decl., **Exhibit G.** Moreover, he avers

that ECS does not maintain the facility that is located in the trench that runs in an east-west direction within subject roadway cut. See John Decl., **Exhibit G.**

At his deposition, Mr. Donovan testified that based on his review of Google photographs of the accident location, there appears to be a gas facility underneath the location of the defect. See John Decl., **Exhibit M** at page 34 to 36.

Mr. Bradley Ickes of Defendant Optical also testified that the subject defect is a roadway cut containing a failed trench that runs in an east-west direction.  See John Decl., **Exhibit L** at page 22 to 24.  Kelly Cassidy of Con Edison testified that there exists a 12 inch gas pipe at the location of the subject defect.    See John Decl., **Exhibit N** at page 17, 33, 34.

According to the testimony of the DOT witness Oneza, the City of New York repaired defective roadway conditions at the subject intersection on January 9, 2013.  John Decl., **Exhibit J** at pages 27, 28, **Exhibit K**.

## APPLICABLE LEGAL STANDARD

According to the Plainiff's complaint, jurisdiction is based on diversity pursuant to 28 U.S.C. 1332.  See John Decl. Exhibit A.  Therefore, this Court is bound to apply the same New York state substantive law as a New York state trial court. Erie R.R. v. Tomkins, 304 U.S. 64, 78 (1938).   In a diversity case, a federal court must determine how the state's highest court would decide a legal issue, and if the high court has not spoken on the issue, "the best indicators of how it would decide are often the decisions of lower state courts."  In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 849 (2d Cir. 1992).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, after reviewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Nabisco v. Warner–Lambert Co., 220 F.3d 43, 45 (2d Cir.2000). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nabisco v. Warner–Lambert Co., 220 F.3d 43, 45 (2d Cir.2000).

"Although Rule 56 places the burden on the moving party to demonstrate that no genuine issue of material fact exists, 'w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence ... on an essential element of the nonmovant's claim.' Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Specific evidence means more than "conclusory allegations or unsubstantiated speculation." Wallace v. Nat'l R.R. Passenger Corp., 11 CIV. 5419 AJN, 2014 WL 1088906 (S.D.N.Y. Mar. 18, 2014)(citations omitted).

## ARGUMENT

### POINT I

**ECS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ECS DID NOT CAUSE THE SUBJECT HOLE AND THERE IS NO ADMISSIBLE EVIDENCE THAT THE SUBJECT HOLE WAS WITHIN 12 INCHES OF THE ECS MANHOLE COVER.**

In order to establish a common law cause of action for negligence against a non-municipal defendant such as ECS, the plaintiff must demonstrate that the defendant affirmatively created the dangerous condition. Schwartz v. Orange & Rockland Utilities, Inc., 93 A.D.3d 776, 940 N.Y.S.2d 320 (2nd Dept. 2012).

ECS' operations manager, Denis Donovan avers in his affidavit that based on a three year search, ECS did not perform any work in the intersection. (According to the City of New York's motion for summary judgment, the City performed a five year intersection search, and did not find any work records for ECS.) Moreover, Mr. Donovan avers that the subject hole is a roadway trench cut for a facility that runs in an east-west direction. Mr. Donovan avers that ECS has not had a facility that runs in an east-west direction at the intersection north of the ECS manhole since 1916. As such, ECS did not affirmative create the subject roadway cut, and cannot be found liable for causing the defect.

The plaintiff also alleges in his complaint that ECS is liable under 34 RCNY § 2-07(b)(1) and (b)(2), also known as the 12 Inch Rule. According to Mr. Donovan, the area operations manager for ECS, ECS is only responsible to maintain the twelve inches around the perimeter of its manhole cover under the 12 Inch Rule. 34 RCNY § 2–07(b)(1) states that "[t] he owners of covers or gratings on a street are responsible for monitoring the condition of the covers and gratings and the area extending twelve inches outward from the perimeter of the hardware." 34 RCNY § 2–07(b)(2) states that '[t]he owners of covers or gratings shall replace or repair any cover or grating found to be defective and shall repair any defective street condition found within an area extending twelve inches outward from the perimeter of the cover or grating.'" The statute clearly in plain language states that the owner of the cover is only responsible for repairing a street condition found within an area extending twelve inches outward from the perimeter of the cover.

Mr. Zinz testified that he did not know the distance between the hole and the ECS manhole cover. The only evidence produced by the plaintiff on the issue is a photograph taken by the plaintiff's attorney depicting a roadway repair with a ruler showing 10 inches between the

ECS manhole cover and the repair. There is no evidence that the repaired area depicted in the photograph and the original hole were the same dimensions.[1] The plaintiff's photographs of the roadway repair patch are inadmissible for the purpose of providing a distance measurement between the ECS manhole cover and the original hole because the photograph does not show the hole condition as it existed on the date of the accident. Saporito v. City of New York, 14 N.Y.2d 474, 476, 202 N.E.2d 369, 369 (1964). A photograph depicting variances in the terrain is only admissible when the changes do not affect an important issue in the litigation. Id. In this case, the photograph of the roadway repair is inadmissible and cannot be used as evidence to demonstrate the distance between the original hole and the ECS manhole cover because that is the critical issue with respect to the ECS' liability. McGruder v. Gray, 265 A.D.2d 822, 822, 696 N.Y.S.2d 335, 336 (1999). Because Mr. Zinz testified that he cannot state the distance between the hole and the ECS manhole cover, and because there is no other admissible evidence of the distance between the actual hole and the cover, and because it is the plaintiff's burden at trial to demonstrate that the actual hole was within 12 inches of the ECS manhole, the plaintiff cannot prove an essential element to impose liability on ECS under the 12 inch rule. Therefore, ECS is entitled to summary judgment.

---

[1] In fact if the original hole was 18 to 20 inch square as Mr. Zinz testified, then the statement in the Notice of Claim prepared by his attorneys that the hole was a rectangle 26 inches by 33 inches only goes to show that the repair was not the same dimensions as the original hole.

## POINT II

**ECS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO ADMISSIBLE EVIDENCE THAT THE PLAINTIFF FELL WITHIN 12 INCHES OF THE SUBJECT ECS MANHOLE COVER.**

Moreover, even if the photograph of the repair was admissible, ECS is still entitled to summary judgment because Mr. Zinz cannot testify that he tripped within 12 inches of the ECS manhole cover.

It is axiomatic that legislative enactments in derogation of the common law, especially those creating liability where none previously existed must be strictly construed. Vucetovic v. Epson Downs, Inc., 10 N.Y.3d 517, 860 N.Y.S.2d 429, 890 N.E.2d 191 (2008). The utility owner is liable only when the plaintiff tripped in an area within the utility owner's 12 inch zone of responsibility that the owner was required to repair. Storper v. Kobe Club, 76 A.D.3d 426, 427, 906 N.Y.S.2d 543, 544 (2010).

Speculation regarding the specific location of an accident based on knowledge of an approximate location does not create an issue of fact for trial to defeat summary judgment. Siegel v. City of New York, 86 A.D.3d 452, 453, 928 N.Y.S.2d 1, 2 (2011). In Siegel, the plaintiff circled two depressions in a photograph based on the general direction and approximate location that he had walked within the intersection. Id. at 453. One of the two depressions was adjacent to an ECS conduit, and plaintiff's claimed that the conduit trench failed causing the depression. Id. at 453. However, when the plaintiff was asked to identify the specific defect between the two depressions that caused his accident in another close-up photograph, he testified "I am not sure. I'm really not sure." Id. at 453. Despite the fact that the plaintiff circled the area encompassing the two depressions based on his knowledge of the approximate location, the

appellate court held that the basis for the plaintiff's identification of the location of the defect was rank speculation that warranted summary judgment. Id. at 455.

Likewise, in the instant matter, Mr. Zinz was requested at his 50H hearing to place an "X" at the exact location where he stepped into the subject hole and he could not. However, as with the plaintiff in Siegel, he testified demonstrating that he did not have the personal knowledge to comply with the request stating "this is a confusing type of thing." The testimony elicited by his attorney at his deposition demonstrates that the extent of his personal knowledge is that his left foot tripped along the back of the hole and that he fell forward with his right foot going into the hole. However, since he only knows that he tripped over the back of the hole with his left foot and flew forward with his right foot landing inside the hole, and since the hole has a dimension of 26 inches by 33 inches, and since the repaired area itself is 10 inches away from the ECS manhole cover, and since he did not walk over the manhole cover before he met with his accident, any testimony by Mr. Zinz at trial that he tripped within the ECS' 12 inch zone of responsibility would be based on impermissible rank speculation as opposed to his personal knowledge. Siegel v. City of New York, 86 A.D.3d 452, 453, 928 N.Y.S.2d 1, 2 (2011). As such, the plaintiff cannot prove an essential element to impose liability on ECS under the 12 inch rule. Therefore, ECS is entitled to summary judgment.

### POINT III

**ECS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE EVIDENCE SHOWS THAT ECS DID NOT HAVE ACTUAL NOTICE OF THE SUBJECT DEFECT, AND THE EVIDENCE DOES NOT SUPPORT AN INFERENCE OF CONSTRUCTIVE NOTICE OF THE SUBJECT DEFECT.**

Finally, notice of a defective condition is required for liability to be imposed under Rule 2-07(b)(1). Di Sanza v. City of New York, 47 A.D.3d 535, 535, 851 N.Y.S.2d 35, 36 aff'd, 11 N.Y.3d 766, 896 N.E.2d 661 (2008). In Di Sanza, the defendant Consolidated Edison did not have any actual notice of a defective condition with its grate. Furthermore, there was evidence that the condition did not exist five months before the date of the accident. Id. at 535. Based on the evidence that the defect was not present five months before the accident, the appellate court found that there was no constructive notice of the defect. Id. at 535.

According to the testimony of the DOT witness Oneza, the City of New York repaired defective roadway conditions at the subject intersection on January 9, 2013. John Decl., **Exhibit J** at pages 27, 28, **Exhibit K**. There is no indication of the existence of the subject defect at the time of the City's repairs on January 9, 2013, approximately two months and a half before the accident. Because the evidence in this case shows that the roadway cut did not exist approximately less than three months before the accident, the defect did not exist long enough to impute constructive notice to ECS of the defect. Di Sanza v. City of New York, 47 A.D.3d 535, 535, 851 N.Y.S.2d 35, 36 aff'd, 11 N.Y.3d 766, 896 N.E.2d 661 (2008).

### CONCLUSION

For the reasons set forth above, ECS is entitled to summary judgment dismissing the plaintiff's complaint and any cross claims.

DATED:    New York, New York
          September 2, 2014

                                              **CONWAY, FARRELL, CURTIN & KELLY, P.C.**

                                              By: _____
                                                      DARRELL JOHN, ESQ. (DJ 3607)
                                            Attorneys for Defendant, EMPIRE CITY SUBWAY COMPANY (LIMITED)
                                            48 Wall Street – 20th Floor
                                            New York, N.Y. 10005
                                            (212) 785-2929
                                            djohn@conwayfarrell.com