```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
HERBERT ZINZ,                                               :
                                       Plaintiff,           :
                                                            :         13 Civ. 4415 (LGS)
                  -against-                                 :
                                                            :         OPINION AND ORDER
EMPIRE CITY SUBWAY COMPANY                                  :
(LIMITED), et al.,                                          :
                                       Defendants,          :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

On March 30, 2013, Plaintiff Herbert Zinz tripped and fell at the intersection of Spring Street and Broadway in Manhattan, and sustained several injuries. Zinz initiated this lawsuit, based on diversity jurisdiction, asserting a single negligence claim against Defendants Empire City Subway Company (Limited) ("Empire"), the City of New York ("the City"), Consolidated Edison Company of New York, Inc. ("Con Edison"), and Optical Communications, Inc. ("Optical"). Optical has since been dismissed with prejudice by stipulation. The remaining Defendants each filed a motion for summary judgment on Zinz's negligence claim. Plaintiff filed opposition to these motions, and Defendant and Third Party Plaintiff Empire filed opposition to Con Edison and the City's motions.

For the reasons stated below, Empire's motion is denied. Con Edison's motion is denied. The City's motion is granted.

## BACKGROUND

The basic facts of this case are undisputed. On March 30, 2013, at approximately 5:30 p.m., Zinz tripped and fell at the southeast corner of the intersection of Spring Street and Broadway in Manhattan. The notice of claim that Zinz sent to the City alleges that Zinz fell in a rectangular hole approximately 26 inches by 33 inches; the hole was located within the

intersection itself, rather than the painted pedestrian crosswalk.  New York City Department of Transportation records show that (1) Con Edison had performed roadway work and operated subterranean gas lines in the intersection and (2) Empire owned at least one manhole cover in the intersection.

**I.       Roadway Work at the Intersection**

During discovery, the City produced numerous work orders concerning the intersection of Spring Street and Broadway.  Two work orders in particular are worth noting.

On February 23, 2011, the City made temporary repairs to "a 3 x 2' portion of surrounding asphalt around [Empire] marked manhole cover," which was "broken out 5" in [the southeast] c[orner] of [the] intersection."  Department of Transportation records indicate that "[t]emporary repairs were made to make the area safe."  The records, current as of April 24, 2014, mark the condition as "Closed - No Further Updates."

On January 9, 2013, the City made repairs to the same intersection.  Testimony from employees of the City and of Empire suggest that these repairs may have been made improperly.  In particular, the City may not have performed a procedure called "screening," which ensures that the asphalt used to fill a pothole remains stable and does not disintegrate.

**II.      Photographs of the Intersection and Zinz's Identification of the Incident Location**

On approximately April 9, 2013, an attorney from the law firm representing Plaintiff "personally observed, photographed, and measured the distance between the defective condition" that caused Zinz's injuries "and the [Empire] manhole cover in the intersection of Broadway and Spring Street."  Plaintiff's counsel sent several post-incident photographs of the intersection to Defendants.

At his deposition on April 28, 2014, Zinz testified that his left foot "went into this

pothole." Zinz was then presented with one of the post-incident photographs. At counsel's request, Zinz circled the hole in which he fell on one of the post-incident photographs. (Dkt. 61-5, at 34-35).

## STANDARD

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *See id.* at 255.

A federal court sitting in diversity applies the choice of law rules of the forum state; thus, New York choice of law principles apply here. *See In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under New York's interest analysis approach[,] courts seek to effect the law of the jurisdiction having the greatest interest in resolving the particular issue, which in the typical case will be either the jurisdiction where the tort occurred or the domicile of one or more of the parties." *Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 462 (N.Y. 2014) (internal quotation marks and citations omitted). New York law therefore applies here, as the alleged tort took place in New York and all Defendants are New York corporations.

## DISCUSSION

Defendants Empire, the City of New York, and Con Edison have each filed motions for summary judgment. Each motion is addressed in turn below.

**I.     Empire's Motion for Summary Judgment**

Empire argues that it is entitled to summary judgment because (1) Zinz cannot demonstrate that the hole in which he fell was in Empire's area of responsibility -- that is, within twelve inches of an Empire manhole, (2) the evidence that Zinz does offer is inadmissible and (3) Empire had neither actual nor constructive notice of the defect that caused Zinz's injuries.  These arguments fail.

**A.     Sufficiency of Evidence Concerning Empire's Area of Responsibility**

Empire contends that Zinz is unable to show that he tripped within twelve inches of an Empire manhole.  Under the Rules of the City of New York, manhole owners "are responsible for monitoring the condition of the covers . . . and the area extending twelve inches outward from the perimeter of the hardware."  New York, N.Y., R.C.N.Y. tit. 34, ch. 2, § 2-07(b)(1).  Owners are further required to "repair any defective street condition found within an area extending twelve inches outward from the perimeter of the cover . . . ."  *Id.* at § 2-07(b)(2).

Empire argues that, instead of offering any evidence of the distance between the manhole cover and the hole, Zinz "has only produced a post-accident photograph . . . depicting a roadway repair with a tape measure placed between the edge of the repair and the ECS manhole cover showing [ten] inches."  Empire asserts that there is no evidence that "the dimensions of the repair depicted in the photograph were the same as the original hole on the date of the accident."

Empire's arguments are unavailing.  Although Zinz "could not recall the exact manner" in which he tripped, he "specifically identified, by circling . . . on a photographic exhibit, the exact location and condition that caused his fall."  *Cuevas v. City of New York*, 32 A.D.3d 372, 372-73 (N.Y. App. Div. 2006).  "As it [is] not his obligation to prove his claim to defeat the motion for

summary judgment," Zinz is "entitled to a reasonable inference." *Id.* at 373.  Therefore, genuine issues of material fact remain and preclude summary judgment.

### B. Admissibility of the Evidence

Empire also contends that Zinz's post-accident photographs are "inadmissible for the purpose of providing a distance measurement . . . because the photograph does not show the hole condition as it existed on the date of the accident."  This contention fails for three reasons.

First, Empire's reliance on state court evidence rulings is misplaced because the Federal Rules of Evidence apply here.  *See* Fed. R. Evid. 101, 1101.  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted).  Although the post-accident photographs depict a subsequent remedial measure, normally barred by the Federal Rules of Evidence, the photographs are admissible as evidence that Empire controlled the area where Zinz fell.  *See* Fed. R. Evid. 407 (barring admission of evidence subsequent remedial measures, unless offered for "another purpose," such as control); *Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1560-61 (2d Cir. 1992).

Second, Empire asserts that, should these photographs be admitted, the prejudice it would suffer would outweigh the photographs' probative value.  To the contrary, the photographs are highly probative, as they speak to whether Zinz's fall occurred within Empire's area of responsibility.  Although the photographs may be prejudicial in that they tend to undermine Empire's defense, this is not "unfair prejudice," which Rule 403 is intended to address.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

Third, Empire unpersuasively attempts to define Zinz's identification of the hole as "impermissible rank speculation." The single case that Empire cites, *Siegel v. City of New York*, 86 A.D.3d 452, 453 (N.Y. App. Div. 2011), is inapposite. In *Siegel*, the court rejected the plaintiff's identification of where he fell because "he circled the defect in the photograph based on his recognition of the approximate location where he fell—not his recognition of the defect itself." *Id.* at 455. As discussed above, Zinz identified the very hole in which he had tripped, not merely the approximate location where he fell.

Zinz, therefore, has proffered sufficient admissible evidence to defeat Empire's motion for summary judgment.

### C. Notice of the Defect

Empire argues that it had neither actual nor constructive notice of the defect that caused Zinz's injuries. The argument is unavailing because Empire has not identified evidence of monitoring, which it is required to do in order to prevail on its motion.

Under the Rules of the City of New York, Empire is obligated to "monitor[] the condition of the covers . . . and the area extending twelve inches outward from the perimeter of the hardware." New York, N.Y., R.C.N.Y. tit. 34, ch. 2, § 2-07(b)(1). To obtain summary judgment for lack of notice of a defect, a party with a duty to inspect must "offer some evidence as to when the area in question was last inspected relative to the accident." *Williams v. Yang Qi Nail Salon, Inc.*, 113 A.D.3d 843, 845 (N.Y. App. Div. 2014) (internal quotation marks and alterations omitted). Here, Empire has offered no evidence of any steps it took to monitor the area in question. Empire, therefore, has not met its burden on the issue of notice, and summary judgment must be denied.

## II.     Con Edison's Motion for Summary Judgment

Con Edison argues that it is entitled to summary judgment, as Zinz cannot show that Con Edison performed work on the area in which Zinz fell. Con Edison contends that "[a]ny liability found against Con Edison would be based purely on speculation," as Zinz's "sole theory of liability . . . is that since gas lines run underneath the area in question, work 'must' have been performed by Con Edison, even in the absence of any proof." This argument is unpersuasive.

The Rules of the City of New York provide that contractors that perform roadway excavation and restoration work "be responsible for permanent restoration and maintenance of street openings and excavations for a period of three years on unprotected streets, and up to five years on protected streets." New York, N.Y., R.C.N.Y. tit. 34, ch. 2, § 2-11(e)(16)(ii). Although section 2-11 places time limits on a roadway restoration contractor's liability to the City of New York, "[t]he Rules do not limit a contractor's common-law liability for affirmative acts of negligence which result in the creation of a dangerous condition upon a public street or sidewalk." *Ingles v. City of New York*, 309 A.D.2d 835, 835 (N.Y. App. Div. 2003) (citations omitted); *see also Levine v. Zarabi*, 243 A.D.2d 448, 448 (N.Y. App. Div. 1997) ("A contractor may incur liability for an affirmative act of negligence which results in the creation of a dangerous condition." (citations omitted)). Contractors are further obligated to "maintain a street opening location form ('cutform') at their office . . . showing the exact dimensions and location of the restored area." New York, N.Y., R.C.N.Y. tit. 34, ch. 2, § 2-11(e)(16)(i).

Here, genuine issues of material fact remain concerning Con Edison's liability. First, Con Edison acknowledges that it performed excavation work in the southeast corner of the intersection of Broadway and Spring Street and that it operates gas lines underneath the hole in which Zinz fell. Second, testimonial and photographic evidence suggests that the hole is a trench

created by Con Edison. The Con Edison gas pipes are the only facility underneath the hole, and Con Edison markings were visible at the area in question. Third, while Con Edison alleges that a search of its records shows it did not perform any work on the area in question, testimonial evidence suggests that the search it performed, and perhaps the records themselves, were incomplete. These issues of fact preclude summary judgment for Con Edison.

### III.  The City's Motion for Summary Judgment

The City argues that it is entitled to summary judgment because Plaintiff cannot show that (1) the City had prior written notice of the alleged defect or (2) any exceptions to the prior written notice requirement apply here. The City's motion for summary judgment is granted.

#### A.  Applicable Law

Under what is commonly called the "Pothole Law," in a civil action against the City for injuries caused by a roadway defect, a plaintiff generally must plead and prove that "written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to" the City. N.Y.C. Admin. Code § 7-201(c) (the "Pothole Law"); *accord Katz v. City of New York*, 87 N.Y.2d 241, 243 (1995) ("[P]rior written notice of a defect is a condition precedent which plaintiff is required to *plead and prove* to maintain an action against the City." (emphasis added)); *Dutka v. Odierno*, 116 A.D.3d 823, 823-24 (N.Y. App. Div. 2014) (dismissing complaint against municipality where plaintiff did not plead prior written notice); *Estrada v. City of New York*, 273 A.D.2d 194, 194-95 (N.Y. App. Div. 2000) (affirming order granting summary judgment to City where plaintiff did not plead prior written notice).

If a municipal defendant establishes that it lacked prior written notice, "the burden shifts to the plaintiff to demonstrate the applicability of one of two recognized exceptions to the rule -- that the municipality affirmatively created the defect through an act of negligence or that a special

use resulted in a special benefit to the locality." *Yarborough v. City of New York*, 10 N.Y.3d 726, 728 (2008) (citation omitted). "[T]he affirmative negligence exception is limited to work by the City that immediately results in the existence of a dangerous condition." *Id.* (internal quotation marks omitted).

### B. Application

Both Zinz and Empire oppose the City's motion for summary judgment. Each party's arguments are addressed in turn.

#### 1. Zinz's Arguments Opposing the City's Motion for Summary Judgment

Here, Zinz's amended complaint did not plead prior written notice, and his opposition to the City's motion for summary judgment does not contend that the City had prior written notice. Instead, Zinz argues that the affirmative negligence exception applies, and prior written notice therefore is not required. In particular, Zinz contends that "at the very least questions of fact exist as to whether the City's alleged negligence immediately resulted in the existence of a dangerous condition." Zinz points to the allegedly improper pothole repairs that the City performed on January 9, 2013 -- almost three months prior to Zinz's fall -- as affirmative negligence. Zinz's argument is unavailing.

Even assuming the City's repairs were negligent, the notice exception does not apply because Plaintiff has not adduced evidence that the repair immediately resulted in the existence of a dangerous condition. *See Yarborough*, 10 N.Y.3d at 728 (affirming grant of summary judgment for the City where its negligent pothole repair "developed over time with environmental wear and tear"). Zinz argues that, "[w]ithin a few weeks [of the January 9, 2013, repairs], most, if not all, of the fill disintegrated," resulting in the hole in which Zinz fell. New York courts have made

clear that such a timeline is too attenuated to meet to constitute "immediate results" for purposes of the affirmative negligence exception to the notice rule. *See Oboler v. City of New York*, 8 N.Y.3d 888, 889 (2007) (memorandum opinion) ("[T]he affirmative negligence exception is limited to work by the City that *immediately* results in the existence of a dangerous condition." (internal quotation marks, citation and alteration omitted) (emphasis in original)); *Wald v. City of New York*, 115 A.D.3d 939, 941 (N.Y. App. Div. 2014) (holding that evidence of City's repairs "more than 10 weeks prior to the . . . accident, did not raise a triable issue of fact as to whether the City affirmatively created the condition, as there was no evidence that a dangerous condition existed immediately after the repair was completed or that the repair caused subsequent immediate deterioration"); *Spanos v. Town of Clarkstown*, 81 A.D.3d 711, 713 (N.Y. App. Div. 2011) (holding that evidence of repairs made two months before accident "is insufficient . . . to raise an issue of fact as to whether the defendant's repair immediately resulted in the existence of a dangerous condition" (internal quotation marks and alteration omitted)).

Because the City lacked notice of a dangerous condition, and under New York law the negligence exception to the notice requirement does not apply, the City is entitled to summary judgment.

### 2. Empire Arguments Opposing the City's Motion for Summary Judgment

Defendant and Third Party Plaintiff Empire argues that the City is not entitled to summary judgment because it failed to replace temporary pothole repairs at the intersection in question with permanent repairs. Empire's argument likewise fails because, under New York law, the City's failure to act does not trigger the affirmative negligence exception to the notice requirement.

Empire asserts that, on February 23, 2011, the City made temporary repairs to the southeast quadrant of the intersection at Spring and Broadway and subsequently failed to make permanent repairs. Empire argues that "[b]ecause the City was aware that its repair was temporary, it was aware at the time of the repair that the repair was insufficient and that a permanent repair would have to be made." These allegations do not meet the requirements for the affirmative negligence exception both because of the "immediate result" requirement discussed above, and because a failure to act is not affirmative negligence under New York law. *See Vega v. City of New York*, 88 A.D.3d 497, 498 (N.Y. App. Div. 2011) ("As a failure to act is not an affirmative act, such conduct amounts to nonfeasance, rather than affirmative negligence.") (internal quotation marks omitted). The City is therefore entitled to summary judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, Empire's motion for summary judgment is DENIED (Dkt. # 60). Con Edison's motion for summary judgment is DENIED (Dkt. # 65). The City's motion for summary judgment is GRANTED (Dkt # 55). The City's separately filed Motion in Limine is DENIED as moot (Dkt. # 90). The Clerk of the Court is directed to close the foregoing motions. SO ORDERED.

Dated: October 14, 2014
      New York, New York

                                                                   **LORNA G. SCHOFIELD**
                                                        **UNITED STATES DISTRICT JUDGE**